## THE RIALTO.*

### NEW YORK HARBOR & TOW-BOAT CO. *v.* GRAIN ELEVATORS. AMERICA AND EGYPT, AND STEAM-SHIP RIALTO. (Three Cases.)*

*(District Court, E. D. New York. December 30, 1882.)*

1. SALVAGE — PROXIMITY TO BURNING PIER — GRAIN ELEVATORS — EXTENT OF PERIL.

   A salvage service rendered by a tug to two grain elevators, worth $12,000 to $15,000 each, which consisted in towing them out into the stream from a pier on fire, where their peril was not great, was rewarded by $500, half to be paid by each elevator.

2. SAME—ELEVATORS ADRIFT.

   The service of a tug which took hold of the same elevators adrift in the stream and took them to a pier, their peril being slight and the labor small, was rewarded by $50.

3. SAME—STEAM-SHIP ON FIRE IN PROXIMITY TO BURNING PIER—PUMPING.

   At the time of this fire the steam-ship R., valued with cargo at $378,000, lay along-side the pier, and caught fire in many places from the pier: and cotton in her between-decks also caught fire. The tug M. made a line fast to her and attempted to haul her out; the line broke and the tug engaged in efforts to get a second line to her, but she was finally moved from the pier by a hawser attached to another tug, the Y. A. Afterwards, the tugs S. and F. rendered service in throwing water on the steam-ship by means of their steam-pumps. The tug Y. A. was compensated for her service, and no claim in her behalf was before the court. *Held,* that the M. contributed in some degree to the success of the tug Y. A., and she was allowed $500; that the pumping service of the S. and the F. was an undoubted salvage service, and they were awarded $2,000.

4. SAME—COSTS.

   As no tender of any sum had been made, costs were allowed in all three cases.

In Admiralty.

*Beebe, Wilcox & Hobbs,* for libelant.

*Goodrich, Deady & Platt,* for the elevators.

*Foster & Thomson,* for the steam-ship.

BENEDICT, J. These actions have arisen out of the burning of the Eagle pier, at Hoboken, on the sixth day of November, 1881, by

*Reported by R. D. & Wyllys Benedict.

which fire the grain elevator Egypt, the grain elevator America, and the steam-ship Rialto were placed in peril of being destroyed by fire.

The first action is brought to recover for salvage services rendered on that occasion by the steam-tug Virginia Seymour and the steam-tug E. M. Millard to the grain elevator Egypt. The second-mentioned suit is to recover for salvage services rendered on that occasion by the same tugs to the grain elevator America. The third-mentioned suit is to recover for salvage services rendered on that occasion by the steam-tug E. M. Millard, the steam-tug Virginia Seymour, and the steam-tug William Fletcher to the steam-ship Rialto. The volume of testimony introduced in support of and in opposition to these demands is large, and, in some particulars, conflicting. But no critical discussion of it in the various aspects presented by the advocates will be attempted. All that time permits is a statement of the conclusions arrived at after a careful consideration of all that has been said. The rule of law by which the court is to be guided in a case like this may be stated by quoting the language of Mr. Justice BRADLEY in the case of the *The Suliote*, 5 FED. REP. 99, where some $20,000 was awarded for services rendered by tugs in pumping water into a ship valued at about $250,000, on fire at a pier. In deciding that case it was said:

"Salvage should be regarded in the light of compensation and reward, and not in the light of prize. The latter is more like a gift of fortune conferred without regard to the loss or sufferings of the owner, who is a public enemy; while salvage is the reward granted for saving the property of the unfortunate, and should not exceed what is *necessary to insure the most prompt, energetic, and daring effort of those who have it in their power to furnish aid and succor*. Anything beyond this would be foreign to the principles and purposes of salvage; anything short of this would not secure its objects. The courts should be liberal, but not extravagant; otherwise, that which is intended as an encouragement to rescue property from destruction may become a temptation to subject it to peril."

In the light of this admirable statement of the law, I proceed, in the first place, to pass upon the claim made against the two elevators for the services of the tug Virginia Seymour. The service to each elevator was the same, as it was rendered at one and the same time, as both elevators were in equal peril, and they were about of equal value, say from $12,000 to $15,000 each. This service consisted in going to the elevators, while in the slip and in danger of being burned up, and towing them out into the stream, where they were left secure from all danger from the fire. That this was a salvage service has been conceded in behalf of the elevators. The only controversy

is in respect to the extent of the award. On this point the difference between the parties is extreme, owing not to any dispute as to the labor performed, but to a great difference of opinion in regard to the extent of the peril to which the elevators were exposed at the time the service was performed. My conclusion, after a careful examination of the proofs, is that while the burning of the Eagle pier caused a hot and dangerous fire, which to some extent imperiled all the vessels in the adjoining slip, including these elevators, still the peril of these elevators was not great. For this reason, I give to the Virginia Seymour a reward moderate in amount, considering the value of the property saved, but at the same time more than a *quantum meruit* for the service performed. I fix her reward at $500, to be paid by the two elevators in equal proportion.

Next to be disposed of is the claim for the services rendered to these same elevators by the tug E. M. Millard. The service of the E. M. Millard consisted in taking hold of the elevators after the Virginia Seymour had left them in the stream to go to the aid of the steamer, and in taking them to a pier where they could be safely moored. This also was a salvage service, for the elevators were adrift in the stream without motive power of their own or means of controlling their movements, and therefore in some slight peril, from which they were released by the voluntary efforts of the Millard. But the peril was so slight and the labor so small, that $50 will be salvage compensation therefor.

There remains to consider the claims of the E. M. Millard, the Virginia Seymour, and the William Fletcher, for services rendered on the same occasion to the steam-ship Rialto, valued, with the cargo on board, at $378,000. At the time the Eagle pier caught fire, the steamer Rialto lay moored along-side that pier, laden with cargo, consisting in part of cotton and hemp. If she had not been promptly removed from the pier, her total destruction by fire would have been certain. She was removed from the pier into the stream and sustained but little injury. This was accomplished by the efforts of the three tugs above-mentioned, and the tug Young America. The Young America has been compensated for her services, and no claim on her behalf is before the court. The other tugs each claim to have assisted in saving the steamer, and to be entitled to salvage compensation for their services rendered in her behalf.

Here, too, the difference between the parties is extreme,—the libel-ants contending with zeal and ability for a very large reward; the

claimants denying that the service rendered by the tugs, in whose behalf suit is brought, is entitled to any reward as for a salvage service.

The service performed by the Millard, on the occasion in question, consisted in hastening to the assistance of the steamer as soon as the fire was observed, making a line fast to her, and attempting to haul her away from the burning pier, she being then on fire in many places above deck, and the cotton in her between-decks being also on fire.

It has been contended that the efforts of the Millard must be held to have failed of success, and her claim for salvage wholly rejected for that reason. But I cannot agree to this. On the contrary, I am of the opinion that although the hawser by which the steamer was finally moved from the pier was attached to the Young America and not the Millard, yet the Millard was at that moment engaged in efforts to get a second line to the steamer, and that she contributed in some degree to the success of the Young America. She is, therefore, entitled to salvage compensation for what she did. Her services did not, however, involve any great amount of time, or require any extraordinary labor, nor were they accompanied by any peril to her. Taking into consideration all the circumstances as described by the testimony, I conclude that $500 will be a liberal reward to the Millard. If she had not broken her first line, and had at her first effort succeeded in taking the steam-ship out into the stream, I should have considered her entitled to a much larger compensation than the sum I have named.

The main services performed by the Virginia Seymour and the William Fletcher in behalf of the steamer were rendered after the steamer had been towed out into the stream and beyond danger from the burning pier, and consisted in throwing water on the fire by means of their steam-pumps. At this time the upper works of the steamer were burning, and also some bales of cotton in her between-decks. While it is not improbable that the fire then burning on her upper works and in the between-decks might have been extinguished by those on board, still the steamer was in danger, and the services of the Virginia Seymour and the William Fletcher were properly desired and promptly rendered. In regard to these services it has been contended in behalf of the steamer that, as they consisted in mere pumping, without risk, they afford no ground for a salvage reward. My opinion, however, is that an undoubted salvage service was performed by these two tugs. In the case of *The Suliote*, already referred to, a

salvage reward of $2,000 was given by Mr. Justice BRADLEY to the tug Maud Wilmot for mere pumping during a few minutes, and staying in the vicinity until the fire in the ship was extinguished by another boat.    The present case differs from the case of *The Suliote* in this, among other things : that there the fire originated within the ship, and its extent could not be known until it was extinguished.    Here the steam-ship was an iron vessel, the fire was communicated to her by the burning pier, and although some bales of cotton in the between-decks were on fire, it was manifest at the time the Virginia Seymour and the William Fletcher began to play water upon her that the fire in her would be extinguished without difficulty.    In this case, too, the powerful public fire-boat Havemeyer was at hand and able to extinguish the fire, if requested so to do.    While, therefore, I consider the case of *The Suliote* as furnishing authority for a decision that the service performed by the Virginia Seymour and the William Fletcher was a salvage service, I do not consider the case an authority for awarding the sum, or any thing near the sum, that has been suggested in behalf of the libelants as proper to be awarded to these tugs.

In view of all the circumstances described by the evidence, my opinion is that the sum of $2,000 will be a liberal reward for the service rendered the steamer by the Virginia Seymour and the William Fletcher.    This sum I do not at this time apportion between these two tugs, because they belong to one owner, and, I suppose, an apportionment will not be necessary.    Neither is any apportionment of any of the sums awarded between the owners, masters, and crews of the respective salving vessels made at this time, because all are represented by one proctor, and they may agree upon an apportionment that will be satisfactory.    If no agreement in regard to the respective shares can be reached, application for an apportionment may be made hereafter.

In regard to costs, inasmuch as no tender of any sum was at any time made, the libelants are entitled to recover the costs of the various actions, and such costs must be borne by the respective claimants in proportion to the amounts awarded against them.