# THE JOHN SWAN.

## MURRAY *et al. v.* THE JOHN SWAN.

## SCHUYLER *et al. v.* SAME.

(*District Court, S. D. New York.* April 26, 1892.)

SALVAGE—FIRE ON BULKHEAD—APPREHENSION OF DANGER—EXCESSIVE SECURITY—
COSTS.

Fire broke out in a building near a bulkhead, within 40 or 50 feet of which lay the barkentine John Swan. Two tugs, coming up, were requested by the only person on the ship to tow her into the stream, which was done; one of the tugs remaining by her, as her anchor dragged somewhat. Before the tugs had hauled the vessel out, the city fire boat arrived. Events proved that the fire traveled away from the ship, and that there was no absolute necessity for hauling her into the stream. *Held*, that at the time the service was begun there was such reasonable apprehension of danger as made it proper to remove the ship; that the service, therefore, was a salvage service, though of small merit; and $125 was awarded to one tug, and $75 to the other, costs being refused to one tug because she had exacted security in the sum of $5,000.

In Admiralty. Libel for salvage.
*Goodrich, Deady & Goodrich,* for the Henry A. Peck.
*Owen, Gray & Sturges,* for the Quaker City.
*Wing, Shoudy & Putnam,* for the John Swan.

BROWN, District Judge. On June 1, 1891, the barkentine John Swan, loaded and ready for sea, lay on the north side of the wharf at the foot of North Sixth street, Williamsburgh. Between 11 and 12 P. M. a fire broke out in the street and in a building stretching across from North Sixth to North Seventh streets a short distance from the bulkhead at the head of the ship. The stern of the ship was some 40 or 50 feet distant from this bulkhead. The tugs Henry A. Peck and the Quaker City in the East river, observing the fire, made their way thither. The Peck arrived first. One of her hands was sent to the Swan to ascertain if help was desired. No one was on board of her except a watchman, who was asleep; being roused, he asked that the ship be towed out. The Quaker City had by that time arrived; both tugs got out hawsers to the ship and towed her out in the stream, where she was anchored. The Peck, finding that the anchor dragged some, remained by her; the Quaker City left for other employment.

The claimants contend that the vessel was in no danger, and that the service was of no value. The witnesses for the Peck affirm that smoke and sparks were flying about the vessel. The claimants contend that this is a gross misrepresentation; their testimony is, that at least from half an hour after the tugs arrived, when their witnesses were on the scene, the wind was setting up river and on shore, so as to carry any fire sparks away from the ship. The fire extended two blocks to the northward; and not at all to the southward; it was hotter and fiercer at North Seventh street than at North Sixth. Some bagging and bar-

rels on the bulkhead between caught fire, and were more or less consumed. A line of loaded cars, which was on the North Sixth street wharf running parallel with the ship at a distance of about 35 feet from her, was not removed during the fire, and the cars were not damaged. About the time the tugs were hauling the ship out of her berth, the city fire boat Seth Low came up river, and waiting below until the ship was hauled out, then went into the slip alongside the North Sixth street pier as far up as the bulkhead, remained there several hours, and played upon the fire until it was subdued, her stern occupying a part of the berth in which the ship had been before.

Whether a service is a salvage one or not, is not to be determined by what is ascertained or judged after the event. It is enough that at the time the service is rendered, the vessel is in a "situation of actual apprehension though not of actual danger." *The Raikes*, 1 Hagg. Adm. 246. See *The Alaska*, 23 Fed. Rep. 597, 607, 608, and cases there cited. At the time this service was begun, I have no doubt that the removal of this ship was a proper and necessary act; not in the sense that there was a certainty of danger or loss, but such a reasonable apprehension of danger as made it prudent to remove her. That was requested by the watchman, the only person in charge. It could not then be known how fiercely the fire might rage, or how much it might spread along the bulkhead or the wharf. The fire boat, it is true, appeared on the spot before the ship got out into the stream; and it is now seen that it would have been quite sufficient had the ship been merely hauled out to the end of the wharf and made fast there. The presence of the fire boat inside of the slip, and between the bulkhead and the ship, would have been a complete protection from danger, as the captain of the Quaker City stated. While these circumstances do not deprive the service of a salvage character, they make it one of small merit. It involved no difficulty or danger to the tugs; the service was short, except that the Peck lay by, as was proper, when the anchor was dragging. The damage to the Swan and the loss of ropes and some other articles in the course of the service, as testified to, amount to $84. Taking all these circumstances into account, I think $125 to the Peck, and $75 to the Quaker City, will be a sufficient award for the services rendered. But as the claimants were required by the Peck to give security in the grossly excessive amount of $5,000, I do not award her costs.