ALEXANDER et al. v. CAR FLOATS NOS. 1, 3, 4, AND 5.

(District Court, S. D. New York. November 9, 1894.)

SALVAGE—CAR FLOATS—FIRE IN SLIP—TOWING OUT—SHAM SERVICE.

Where a fire broke out on the wharf and the shore adjoining a slip in which were four car floats loaded with cars of the value of $39,000, one of which caught fire, and the services of numerous tugs were accepted in hauling all the car floats out of the slip, and in pumping on the floats afire, the sum of $2,000 salvage was allowed, and apportioned among the different tugs according to the service rendered by each; nothing being allowed to one of the tugs which left before any valuable service was completed; and the amount allowed to another tug being reduced as marking the disapproval of the court of her sham exhibition of work, by the long continuance of unnecessary pumping.

These were libels for salvage by Malcolm Alexander and other owners of tugs against car floats Nos. 1, 3, 4, and 5.

Benedict & Benedict, for the James Roy, the Sparks, and the Charm.

Wilcox, Adams & Green, for the Adelaide and the America.

Alexander & Ash, for the Rambler.

McCarthy & Berrier, for the Nellie.

Wing, Shoudy & Putnam, for the Indian, the Atwood, and the Runyon.

Peter S. Carter, for the Hohne and the Lee.

Stewart & Macklin, for claimant.

BROWN, District Judge. The above are salvage claims by the owners of 12 different tugs, for services rendered in the afternoon of May 9, 1894, in hauling from the slip between piers 32 and 33,

East river, car floats 1, 3, 4, and 5, and putting out fire on float No. 3.

A destructive fire broke out about 1 o'clock p. m. near the bulkhead between piers 33 and 34. The covered wooden shed, with the goods inclosed, running down pier 33 to within about 50 or 60 feet of the outer end of the pier, was destroyed. The four car floats entirely filled the slip between piers 32 and 33, being moored to the bulkhead, and all tied together. No. 3, with ten cars on board, containing merchandise, was next to pier 33. The rail of No. 3, near the bulkhead and next to the pier, caught fire, and to some extent, also, the three end cars on that side nearest to the bulkhead. In the second car from the shore end, the fire reached the goods inside of the car, where it was smoldering for some time before it could be extinguished by the several lines of hose that were played on it. Six tugs were more or less engaged in hauling No. 3 out of the slip, and putting out the fire. The other tugs were engaged in hauling out and taking care of the other three floats. The value of the four floats, with cars and merchandise, was about $39,000. The excessive number of tugs present, ready and able to perform the necessary service, does not increase the amount to be awarded altogether, but rather diminishes it, as showing the abundant and ready means of relief.

Taking all the circumstances into account, I think $2,000 will be a suitable award for this whole service, which sum will be apportioned according to the special facts relating to each float and the tugs assisting.

The six tugs engaged with No. 3 arrived upon the ground in the following order: The John Lee, the Sparks, the Charm, the Rambler, the James Roy, the Nellie. The Lee was a small tug. She had no fire pump. Upon conflicting evidence, I am constrained to find that she rendered no beneficial service, having left the scene before the float was pulled out of the slip, and away from the burning shed enough to be of any use. The other five tugs all rendered some assistance to No. 3, and all played upon the fire, except the Sparks, which, though first on the ground after the Lee, had no fire pump. Her work was pulling alone, and for that even she was not alone sufficient to move the float, so that her priority was of little value. The Rambler went along the upper side of No. 3, and commenced pulling, and playing her pump, as soon as the float had been hauled out in the stream, by the Sparks and the Charm, far enough to admit of her going alongside No. 3 ahead of the Charm. The Roy and the Nellie came alongside the lower side of No. 3, and pumped about the time that the float had got hauled out of the slip. There was but little fire on the float itself, or on the outside of the cars, and it was quickly extinguished, excepting where it had penetrated inside of the second car. Besides playing inside through the doorway, a hole was cut nearer to the end, through which streams were poured. The Charm alone, or at least with either one of the other boats having a pump, was sufficient to put out the fire. But the others assisted in the work, and although not absolutely necessary, their services were accepted by the persons in charge of the floats.

The Charm, being the first on the ground with a pump, is entitled to the largest award, both for first pumping, and for the first effectual

hauling out in conjunction with the Sparks, a smaller tug. There was no danger from the fire to any of the tugs, and it was not over two or three hours before the boats were again returned to the slip. The service to float No. 3 was essential to her safety. Except for the speedy presence of tugs able to remove her from the slip, and to put out the fire at once, she must have been destroyed or very greatly damaged, besides injuring the adjacent floats. Float No. 3, and the ten cars with the merchandise on board, were worth about $10,000. The immediate removal of the float from the slip was of prime importance, and was accomplished practically by the Charm and the Sparks alone. For the service to No. 3, I allow $1,600, divided among the tugs as follows:

| | |
|---|---|
| To the Charm, | $600. |
| Sparks, | 150. |
| Rambler, | 175. |
| Roy, | 175. |
| Nellie, | 150. |

Alongside No. 3 was float No. 4, with ten cars on board, worth altogether about $10,000. Next below No. 4 was No. 1, a small float, worth, with cars and contents, about $5,700. Next below, and alongside of pier 32, was float No. 5, which, with cars and contents, was worth about $13,000. None of these three floats were touched by the fire. They were, however, in some danger. The wind at the beginning of the fire was towards these floats, though it soon after changed, so as to carry the fire away from them. As it turned out, probably Nos. 1 and 5 would not have suffered had they remained in the slip. The city fire boats, which soon appeared, though largely occupied with other parts of the fire, would probably have been able to prevent damage to them from the burning shed 50 feet away. It was probably necessary to remove No. 4, both to avoid the fire, and to permit the fire boats to work in the slip. At the time when all three were removed, however, it could not be foreseen how extensive or destructive the fire would become; and reasonable prudence undoubtedly demanded the removal of all the floats from the slip; and the persons in charge of the floats deemed it necessary, and desired their removal. The services to all were accepted, and should, therefore, be treated as a salvage service, though of a grade inferior to that rendered to No. 3. The John Swan, 50 Fed. 447.

Float No. 4 was next to No. 3 in the most apparent danger, and required removal. The tugs Indian, Atwood and Runyon towed her from the slip, and back again after a couple of hours, for which I allow $450, viz. $150 to each tug.

The other two floats, Nos. 1 and 5, being in much less danger, $300 will, I think, be a sufficient allowance for the services to both. They were removed by three tugs, the America, the Adelaide, and the Harry Hohne. To the two first, I allow $120 each; to the Hohne, $60, a less amount, as marking my condemnation of the long-continued and needless playing of her hose pump, as a sham exhibition of work.

Of the amounts above awarded, two-fifths will go to the officers and crew of each tug, in proportion to their wages, and three-fifths to the owners, with costs; except as respects the Hohne, whose owners should receive three-fourths, and the officers and crew one-fourth, with costs.