## THE ETONA.

### DOHERR v. THE ETONA.

(District Court, S. D. New York. November 24, 1894.)

CARRIAGE BY SEA—DAMAGE TO HIDES—SUGAR DRAINAGE—FOREIGN SHIPS—STRANDING—PILOT'S MISTAKE—INVALID STIPULATIONS—HARTER ACT.

The British ship E. being anchored by a local pilot in the Amazon at Para, while unloading part of her cargo dragged her anchor from the great force of the current and grounded upon a sand bank which caused her to take a strong list, in consequence of which the drainage from some Pernambuco sugar in the between decks ran over the coamings upon some hides in the hold beneath: *Held* (1) that the stowage of hides beneath sugar stowed on perfectly tight iron between decks was not negligent stowing; (2) that the possibility of the escape of drainage into the hold over coamings a foot high, in consequence of a strong list from stranding, was not such a contingency as was to be foreseen and guarded against, or evidence of the ship's negligence; (3) that the selection of a place for anchoring, from which the stranding resulted, was a part of "the navigation and management of the ship," within the third section of the Harter

act of February 13, 1893 (2 Supp. Rev. St. 81); (4) that the provisions of that section include foreign ships; (5) that the provisions of the bill of lading that "all damage claims shall be settled direct with the owners according to English law, to the exclusion of proceedings in the courts of any other country," were invalid, as respects transportation between Brazil and New York.

This was libel in rem by John B. Doherr against the steamship Etona for damages to a load of hides stowed in her hold.

Wing, Shoudy & Putnam, for libelant.

Convers & Kirlin, for claimant.

BROWN, District Judge. The above libel was for damage to hides shipped at Buenos Ayres on board the British ship Etona in the lower hold, No. 2 hatch, above which was stowed a quantity of Pernambuco sugar, the drainage from which was found on arrival of the ship at New York, to have injured the hides beneath.

The evidence shows that the deck where the sugar was stowed, was a perfectly tight iron deck; that the shipment of hides in January, 1894, was under a bill of lading, which permitted the taking of cargo at other ports, excepted damages arising from negligence, provided that in no case should the steamer be liable for any damage to the goods, and that all damage claims should be "settled direct with the owners according to English law to the exclusion of proceedings in the courts of any other country"; an evidently invalid stipulation as against these consignees, and as to transportation between Brazil and New York. Slocum v. Western Assur. Co., 42 Fed. 236; The Guildhall, 58 Fed. 796, and cases there cited. The drainage in question arose under the following extraordinary circumstances:

After the loading of the hides at Buenos Ayres in the lower hold, the ship proceeded to Rio, and thence to Pernambuco, where she took in sugar between decks. Thence, by a passage of about 7 days, she went to Para, a port about 100 miles up the river Amazon, where she was taken to an anchorage by a local pilot, and anchored by him near other shipping with first 45 fathoms of chain out, and afterwards 60 fathoms, and proceeded to unload certain cargo shipped for that port. On the fourth day after anchoring, and while unloading, the anchor dragged, probably from the great force of the current on the flood tide, which there rises about 12 feet, and from being somewhat outside of the ordinary anchorage ground. Before she could be brought to a stand, by the second anchor, which was then thrown over, the ship grounded upon a sand bank, which caused her to take a strong list, and some of the drainage of the sugar in consequence of this list ran down over the coamings of the hatch upon the hides beneath, notwithstanding all efforts to prevent it.

It is evident that the efficient cause of this damage was the stranding on going adrift. This was wholly unexpected, and could not have been anticipated. It was a sea-peril within the exception of the bill of lading. Montoya v. Assurance Co., 6 Exch. 451. The burden of

showing negligence in the ship was on the libelant. Transportation Co. v. Downer, 11 Wall. 129; The Glendarrock [1894] Prob. 226; The Neptune, 6 Blatchf. 193, Fed. Cas. No. 10,118. Other vessels in that vicinity did not drag. If negligence is to be imputed to any one, it would seem to be against the local pilot in respect to the position assigned by him to the ship, and in not ordering over both anchors instead of one only.

I cannot find it to be negligence in the ship to stow sugar in the between decks over hides, in a ship with a perfectly tight iron deck and coamings a foot high, and with scuppers sufficient for all drainage that could be anticipated. I do not think the mere possibility of stranding and of the escape of drainage over coamings a foot high, through a strong list arising from stranding, are such contingencies as are required to be foreseen and guarded against in the exercise of reasonable and ordinary care; and in all other respects the evidence acquits the ship of negligence. There is no proof that the patent anchors were inferior or deficient.

If, however, under the above circumstances the ship could formerly have been held liable for negligence of the local pilot in consequence of which she went adrift, the evidence in her behalf shows the exercise of "due diligence by the owners to make her in all respects seaworthy and properly manned, equipped, and supplied," so as to bring both the vessel and her owners within the protection of the third section of the act of congress passed February 13, 1893 (27 Stat. c. 105, p. 445; 2 Supp. Rev. St. c. 105, p. 81). See the recent case of The Silvia, 64 Fed. 887.

If that section extends to foreign vessels bringing cargoes to ports of the United States, the case must be decided in favor of the defendant, whether the clauses of the bill of lading with reference to negligence, and adopting the law of England, be deemed valid and operative or not. If they are valid and operative, then under the stipulation as to the effect of the British law, the defense is sustained; while if the clause adopting the law of England be held invalid or inoperative as an attempt to oust the jurisdiction of all other countries than that of England, or as attempting to introduce wholesale the law of a forum wholly foreign to the transaction, then our law, in the absence of any reference to the law of Brazil, remains as the only law possibly applicable to the case.

Under the explicit language of the third section of the act of February 13, 1893, which extends its provisions to "any vessel transporting merchandise or property to or from any port in the United States," I do not feel authorized to limit its application to vessels of the United States alone. The construction given to our statute, limiting shipowners' liabilities to the value of the vessel and freight, seems to me analogous. The Scotland, 105 U. S. 24, 30. Although foreign carriers will thereby enjoy some immunities under this act that are not accorded to our vessels in foreign ports, that is a matter for which congress is responsible under the explicit terms of the act, and not the courts.

The libel is, therefore, dismissed; but without costs.