# JAMES CLARK COMPANY OF BALTIMORE CITY *v.* STEAM FERRYBOAT "COLUMBIA."

ADMIRALTY; SALVAGE SERVICES; COSTS.

1. Service rendered by a vessel in rescuing another vessel from peril by fire, and in attempting to put out fire in or about the vessel, is in the nature of salvage service, and is not to be compensated on the principle of *quantum meruit.*

2. Costs are properly awarded a libellant in admiralty who claims salvage for services rendered in assisting a vessel on fire, where it appears that he was entitled to compensation for salvage service, and the libellee, who refused to treat with him on the ground that his demands were excessive, made no valid tender of any sum in compensation for such services.

3. A judgment of the lower court in admiralty proceedings by the owner of a tugboat for salvage services in attempting to save a ferryboat from destruction by fire, and awarding the libellant $100, and requiring him to pay his own costs, was reversed, and the libellant awarded $250 and the costs below and on appeal, where it appeared that there was some degree of danger to the assisting tug, and great peril to the ferryboat, and some property saved, and also that the libellant was not offered by the libellee any sum in settlement of the claim, but was forced to file its libel or surrender a clear right.

No. 1543. Submitted May 24, 1905. Decided June 13, 1905.

HEARING on an appeal by the libellant from a decree of the Supreme Court of the District of Columbia sitting as a United States District Court in an admiralty proceeding to recover for salvage services.                          *Reversed.*

The facts are sufficiently stated in the opinion.

*Mr. Corcoran Thom* and *Mr. H. N. Abercrombie* for the appellant.

*Mr. J. J. Darlington* for the appellees.

Mr. Justice DUELL delivered the opinion of the Court:

This appeal has been taken by the appellant, libellant, from a judgment awarding it the sum of $100 as compensation for certain services rendered as hereinafter set forth. Each party was adjudged to pay its own costs.

The action arose out of the burning of the steam ferryboat Columbia, at its wharf in the city of Washington, on the night of May 13, 1903, and it was brought to recover for salvage services rendered on that occasion by the tug Sarah.

As is usual in this class of cases, the testimony is conflicting in the extreme. The witnesses called by libellant seek to magnify the services of The Sarah, and one reading their direct testimony alone would be led to almost doubt the presence of the Washington fire department's fire-fighting equipment and trained fire fighters. Reading the testimony adduced for the libellee, it would appear that even the presence that night of the tug Sarah in the port of Washington was open to question. The smoke of the fire must have clouded the vision and fair-mindedness of the witnesses even at the time of giving their testimony. A considerable amount of charity is required in order to excuse the evident bias of the witnesses. From the mass of conflicting testimony sufficient facts may be gathered so that the events of the night may be marshaled and the facts pieced together upon which to base a fairly correct finding. The Columbia was tied up at her wharf for the night. The fire broke out about half after nine, and, as soon as could be reasonably expected after the alarm was given, the engines of the Washington fire department and the tug Sarah were doing the utmost in their power to save as much as possible of The Columbia. The situation of The Columbia was such that, while the engines were somewhat hampered, they were able to do effective service, and the tug was able to take an effective position and throw its stream of water from a point not easily, if at all, accessible to the engines. The fire burned for several hours, The Columbia finally sinking, prac-

tically destroyed, save as to her machinery and hull. On board The Sarah were the captain, mate, engineer, second engineer, and two other men, and she was equipped with a fire pump and hose suitable for fire fighting. The value of The Sarah was at the time about $20,000, and she was sold sometime after for $19,000. The wearing apparel of some of the crew was injured, as was the captain's watch. The value of The Columbia at the time of the fire was, at the least, $33,500, and her value after the fire was at least $4,500. The fair presumption from the testimony is that the owners of The Columbia received at least $29,000 from her insurance. The result of the fire, in view of the fact that so many streams of water were thrown upon her, coupled with the burning of some of the sheds on the wharf, shows that the peril was such as to justify and demand all assistance possible. While, in view of the way the wind was blowing, The Sarah was in little danger, yet we must bear in mind that there is always more or less danger in tying up a tug worth $20,000 to, or near to, a burning boat of the size of The Columbia, which appears to have been about 150 feet long.

Making due allowance for the natural desire of firemen to claim all the credit of fighting a fire with the best possible results, we must consider their testimony somewhat weakened by the report made the day following the fire by the chief in charge of the fire department to the chief engineer of the Washington department, in which he says: "The services rendered by Captain Cannon, with the tugboat Sarah, were of great and valuable assistance, on account of the very efficient stream of water thrown by the boat upon the burning steamer from the river side."

It is unnecessary to set forth minutely the services rendered, or to decide just when The Sarah commenced to render aid, or to point out inconsistencies in the testimony of witnesses for both parties. The facts show that all the elements necessary to sustain a claim were present. There was some degree of danger to the assisting tug, great peril to the ferryboat, and some property saved. The answer itself admits that The Sarah rendered some service, and such services as rendered under the circumstances of the case are not compensated upon the principle of

*quantum meruit.*   No principle of American admiralty law is better settled than that services rendered by a vessel in rescuing other vessels from peril from fire, and in attempting to put out fire in or about a vessel, is of the nature of salvage service.   Mr. Justice Joseph P. Bradley recognized and laid down this principle in *Murphy* v. *The Suliote,* 5 Fed. 99, and his decision has been quoted with approval times without number.   The answer of the libellee, in which it admits that some services were rendered by The Sarah, bases its failure to compensate the services upon two grounds, one of which is that it would not treat on the basis of salvage.   It clearly cannot justify on that ground, for it is untenable.   The answer also says that it would not treat with the libellant because its demands were excessive and unreasonable.   It does not appear that it made any offer of settlement, and, therefore, as the libellant was entitled to compensation for salvage services, it may fairly be said to have provoked the suit.   If it had made a valid tender of any reasonable sum, it might even have been entitled to its costs had suit followed. Failing to make such offer, costs are properly awarded to a libellant.   The Rialto, 15 Fed. 124.

So many elements have to be considered in deciding what is a reasonable compensation for salvage services that one case can seldom be an authority on this question for another.   The principle is thus laid down in *Murphy* v. *The Suliote, supra:* "Salvage is the reward granted for saving the property of the unfortunate, and should not exceed what is necessary to insure the most prompt, energetic, and daring effort of those who have it in their power to furnish aid and succor.   Anything beyond that would be foreign to the principles and purposes of salvage; anything short of it would not secure its objects.   The courts should be liberal, but not extravagant."   To the same effect many other decisions might be cited, but the rule enunciated is too well settled.   Judged by the standard above laid down, we feel that the learned justice erred in awarding only $100 to the libellant, and requiring it to pay its costs when it was not offered any sum in settlement of the claim by the libellee, and was forced to surrender a clear right or file its libel.   By the judgment of the

lower court the libellant not only was not rewarded as required by the well-settled rule of law, but was punished for asserting its right to compensation in the nature of salvage.

In our opinion the libellant is entitled at the very least to the sum of $250, with costs in the court below, as well as of this appeal. The libellee had the services of the fire department without compensation, its loss of the boat was largely, if not entirely, made good, and surely it should compensate the volunteer service of The Sarah and its crew. Had not the claim of the libellant been excessive, and had not the testimony been of the nature disclosed by the record, and as in part referred to, even a larger sum might properly have been awarded.

The decree of the Supreme Court of the District of Columbia, holding a United States district court in admiralty, is reversed and the cause remanded, with instructions to enter a decree in accordance with this opinion, with costs.     *Reversed.*