## THE ALICE.

## THE ETNA.

(Circuit Court of Appeals, Fourth Circuit. July 5, 1917.)

No. 1518.

SALVAGE ⊂⊃31 — RESCUE OF SHIP FROM DANGER OF FIRE — ADEQUACY OF AWARD.

A salvage award of $500 to one of two tugs, which together towed a steamship from her slip where she was lying without steam some 300 feet from a burning elevator, *held* not so inadequate as to warrant interference by an appellate court, where, while there was possible danger to the ship and the service was meritorious the danger was not great and the tugs incurred little, if any, risk.

Appeal from the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Suit in admiralty by Sanford & Brooks Company, owner of the tug Alice, against the Navigazione Generale Italiana, owner of the steamship Etna. Decree for libelant, which appeals. Affirmed.

Daniel R. Randall, of Baltimore, Md. (R. E. Lee Marshall, of Baltimore, Md., on the brief), for appellant.

John B. Deming, of Baltimore, Md. (Whitelock, Deming & Kemp, of Baltimore, Md., on the brief), for appellee.

Before KNAPP and WOODS, Circuit Judges, and WADDILL, District Judge.

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

KNAPP, Circuit Judge. The Sanford & Brooks Company, owner of the steam tug Alice, libeled the Italian steamship Etna for alleged salvage service, got a decree for $500 in the court below, and brings this appeal on the ground of the inadequacy of the award. The circumstances in general are these:

In the afternoon of June 13, 1916, a fire occurred in an elevator at the water end of a pier extending southerly into the Patapsco river, in the harbor of Baltimore. The elevator was destroyed and nearby shipping and other property damaged or put in danger. When the fire broke out two steamers, the Etna and the Bologna, were lying bow in on the further or westerly side of the next pier to the west. The width of this pier is 65 feet and the width of the intervening slip 122 feet. The stern of the Etna was about 450 feet from the water end of the pier, and about 365 feet diagonally from the center of the elevator. The Bologna, between the Etna and the stream, had steam up at the time, and moved out under her own power to a place of safety. The Etna had not fully completed her loading, was not under steam, and had a scow at her stern from which some portion of cargo was to be taken.

When the elevator was seen to be on fire, the Alice, which was a thousand feet or so away, went at once to lend assistance. She entered the slip where the Etna was berthed, but in going about had the ill luck to run aground. She got off quickly, however, and in a few minutes had lines from the steamer fastened to her bitts. About this time —just when is somewhat uncertain—the Curtis Bay, a much larger and more powerful tug, arrived at the slip, backed in towards the stern of the ship, made fast to her in some way with the scow between them, and she was then pulled out into the river, the scow going adrift.

So much seems fairly free from doubt, the rest is a tangle of conflict and dispute. The owners of both tugs promptly filed libels, each claiming the credit of a gallant rescue, and each eager to be handsomely rewarded. The trial of the consolidated cases disclosed a variety of contentions. Witnesses for the Alice pictured a brave exploit, amid bursting flames and other perils, which saved a steamer and cargo worth millions from impending destruction. For the Curtis Bay less emphasis was placed on the risk to herself in getting the Etna away, but there was no lack of testimony that she alone effected the escape; the Alice having hindered rather than helped the delivery. On the other hand, the officers of the Etna testified that she was never in any danger, because of her distance from the elevator and the fact that the wind was in the northwest; that there was some heat, but not enough to be really uncomfortable, and it was a hot day anyhow; moreover, that arrangements had been made the night before to have the steamer towed over to Locust Point, where the balance of her cargo was to be taken on; and that when the tugs approached that afternoon it was supposed they had come for that purpose, as otherwise they would not have been allowed to remove her.

In all this contradiction it is not easy to discern the truth or to reach a conclusion that satisfies the sense of justice. The event seems to show, thanks among other things to the presence of a powerful fire

boat, that the Etna would probably not have been damaged if she had remained at her dock. But against this it cannot be denied that there was such possibility of injury, and perhaps serious injury, as to make her removal a matter of obvious prudence. The Alice was first on the scene, to be sure, but she met with a mishap in turning around, and so was not able, for some minutes at least, to give any help to the steamer. In the meantime, as nearly as we can make out, the Curtis Bay backed into the slip and rendered assistance that was prompt and effective. Neither tug took any considerable risk, and such damage as the Alice sustained was slight and unimportant. The service involved only ordinary effort and skill, and it was all over in something like half an hour.

Taking all the circumstances into account, we are not persuaded that the compensation allowed the Alice was so clearly inadequate as to warrant interference with the decree. True, as the case is here presented, the amount seems rather meager in comparison with the award of $1,000 to the Curtis Bay. But as that tug might be thought overpaid for what it did, the comparison plainly fails to show that the Alice was not paid enough. Each claim must stand on its own merits. The removal of the steamer was entirely proper and commendable, even if she were not in actual danger, but it was a salvage service of such low order as to be measured, not by value of ship or cargo, but rather by generous recognition of voluntary aid and generous allowance for the trouble and loss of time incurred by the rescuing tugs. On that basis, which we believe to be correct, the compensation awarded the Alice was not illiberal. Indeed, it appears ample in comparison with awards in other cases of the class to which this belongs, where the aided ship was not in imminent peril. The Rialto (D. C.) 15 Fed. 124; The John Swan (D. C.) 50 Fed. 447; The Dauntless (D. C.) 109 Fed. 912; The Fred E. Scammell (D. C.) 133 Fed. 608.

Affirmed.