## MUNTZ and others *v.* A RAFT OF TIMBER.*

*(Circuit Court, E. D. Louisiana. January, 1883.)*

1. JURISDICTION.
     A raft of timber is subject to the jurisdiction of the admiralty urt in the matter of salvage

2. SALVAGE.
     If part of a salvage service is performed by one set of salvors, and the salvage is afterwards completed by others, the first set are entitled to reward *pro tanto* for the services they actually rendered, and this even though the part they took, standing by itself, would not, in fact, have effected the salvage.

In Admiralty.
*R. King Cutler*, for libelants.
*E. Warren*, for claimants.
PARDEE, J. On a very foggy morning in February, 1880, a large raft of logs broke loose in the upper part of the port of New Orleans. It was discovered by the steam-tug Margaret, a little steam ferry-boat then plying across the river from Louisiana avenue, in the city of New Orleans, to Harvey's canal. The men on the raft called to the ferry-boat to assist in landing the raft. The Margaret went to the assist-

*Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

ance of the raft at considerable peril to herself, and with her steam-power and crew rendered more or less service in getting the raft towards the right bank of the river, where she could be landed in safety to herself and the other shipping in the port; but before the landing was accomplished the large tow-boats Continental and Wasp came up, and, taking charge of the raft, towed it to a safe landing-place in the lower district.

The owner, captain, and crew of the Margaret libeled the raft for salvage. The district judge allowed $51 for the boat and crew. In this court on appeal it is urged—*First*, that a raft of timber is not subject to the jurisdiction of the admiralty court in the matter of salvage; *second*, that the Margaret was too small and weak to be able to render salvage services to a large raft; *third*, that no salvage services can be allowed compensation where the property is not saved, and that the raft in this case was saved by the large tug-boats and not by the Margaret; *fourth*, that the services of the Margaret were of no value to the raft.

A few undisputed principles taken from the text-books settle this case:

"Salvage is compensation for maritime services rendered in saving property or rescuing it from impending peril on the sea, or on a public navigable river or lake, where interstate or foreign commerce is carried on." Marvin, Salvage, § 97. "Salvage may be shortly described as an allowance made for saving a ship or goods, or both, from the damages of the seas, fire, pirates, or enemies." Jones, Salvage, 1. "It is absolutely essential that the salvors should have rendered actual assistance to vessel in distress." Jones, *supra*, 4. "If part of a salvage service is performed by one set of salvors, and the salvage is afterwards completed by others, the first set are entitled to reward *pro tanto* for the services they actually rendered, and this even although the part they took, standing by itself, would not, in fact, have effected the salvage." Jones, *supra*, 9. "Salvage constitutes an important subject of the admiralty jurisdiction, and this jurisdiction may be exercised as well *in personam* as *in rem*." Conkl. Adm. 273. "The district courts shall have jurisdiction as follows: * * * *Eighth*, of all civil causes of admiralty and maritime jurisdiction." Rev. St. § 563.

The district judge was of the opinion from the evidence, that the services of the Margeret and her crew were more or less valuable in saving the imperiled raft, and allowed $51 as compensation.

This judgment should be affirmed, and a decree having that effect will be entered.