THE W. F. BROWN.

THE SUNNY SOUTH.

LAWRENCE *v.* THE W. F. BROWN and THE SUNNY SOUTH, (SMITH, Intervenor.)

*(District Court, E. D. Louisiana. May 9, 1891.)*

1. ADMIRALTY—WAGES OF PERFORMERS IN FLOATING CIRCUS.
    Libelants were performers in a show given in a float or tow at points on the Mississippi river. The tow was propelled by a former ferry-boat, licensed for the coastwise trade. Libelants' chief duty was to perform before the audience, though they also did subordinately some duties connected with running the vessel. The intervening libelant was engineer on the propelling boat or tug-boat. *Held*, that the service of the original libelants was land service, substantially over which the admiralty courts could not take jurisdiction. *Held, also*, that the service of the engineer was maritime, giving to him a maritime lien which could be enforced in a court of admiralty.

2. SAME—WAGES OF ENGINEER ON TUG-BOAT.
    Services rendered by an engineer on the propelling tug-boat were strictly maritime, and his libel must be maintained.

In Admiralty. Libel for wages.
*J. Hutchinson*, for claimant.
*J. D. Grace*, for libelants.

BILLINGS, J. This case is submitted upon exceptions to the jurisdiction of the court as a court of admiralty over the cause, both as to the

libelants, and the intervening libelant, who has had a separate admiralty process and seizure. The libelants who joined in the original libel were employed by the claimant, under these circumstances: The claimant owned a floating house, in which was given an exhibition or circus show at points between Evansville, Ind., and New Orleans; the floating house being for the time moored to the shore, and the spectators—patrons— coming from the land. This floating house was a tow propelled by a former ferry-boat,—a stern-wheel steamer licensed for the coastwise trade, described as a ferry-boat. The original libelants were performers in this circus, hired by the claimant to perform in the exhibition, and also to aid in minor matters, as he should direct, in the conduct of the tug. But their substantial and chief employment was as performers in the floating show.

Two questions are presented: (1) Was the propelling boat a vessel engaged in commerce and navigation? I think she was. She went from point to point upon the navigable waters, subject to admiralty jurisdiction, for hundreds of miles. The place of employment was within admiralty jurisdiction. The nature of the employment was for that sort of intercourse, in connection with a business which made it commercial. It was, without doubt, service performed during navigation; so that, so far as the structure of the vessel and the nature of the claimant's business is concerned, the propelling boat was a tug-boat engaged in commerce and navigation. (2) The second question is, were the libelants and intervening libelants sailors,—mariners,—in that they were employed to navigate the vessel? The original libelants were not. Their chief substantive business or service was to perform before an audience, and thereby afford amusement and entertainment. The fact that they did subordinately some duties connected with running the vessel does not affect the character of their service and employment. It must be classed either as maritime or land service, and it is, for the purpose of such classification, land employment. The service of the intervening libelant was that of engineer upon the propelling vessel, and nothing else. He was exclusively a mariner. My conclusion is therefore that the employment and service of the libelants carried with it no admiralty lien, but that the intervening libelant has a lien which he can enforce in a court of admiralty. The libel must therefore be dismissed, and the intervening libel maintained. This can be done, as the intervening libelant prayed for and has a separate admiralty process.