### THE PUBLIC BATH NO. 13.

TEBO et al. v. MAYOR, ETC., OF CITY OF NEW YORK et al.

SAME v. THE PUBLIC BATH NO. 13.

(District Court, S. D. New York. April 10, 1894.)

1. ADMIRALTY JURISDICTION—FLOATING BATH HOUSE.
   A bath house built on boats, and designed for navigation and transportation, is within admiralty jurisdiction.

2. SALVAGE—SUBJECT-MATTER.
   Use in trade and commerce, of the property saved, is not essential to salvage.

3. SAME—LIABILITY OF BAILEE.
   A bailee in possession of a floating bath for repairs disobeyed the owner's directions as to its fastenings for security from storms, and increased its weight and exposure. *Held*, that he took the risk of its going adrift, and was bound to indemnify the owner for salvage thereupon.

4. SAME — SUIT IN PERSONAM — "REQUEST" FOR SERVICE WITHIN ADMIRALTY RULE 19.
   A floating bath house, the property of a city, but in possession of a bailee for repairs, having gone adrift with no one on board, was picked up by a tug. *Held*, that as it was equally of the highest interest to the bailee and to the city to have it rescued, and as the right to proceed in rem against public property was doubtful, the request necessary, under S. Ct. admiralty rule 19, to sustain a suit in personam, might be implied, as respects both owner and bailee.

5. SAME.
   Query, whether any part of admiralty rule 19 is applicable where the res is exempt from arrest as public property.

This was a libel in personam by William M. Tebo and others against the mayor, aldermen, and commonalty of the city of New York for salvage of Public Floating Bath No. 13, the property of the city, which, while lying in Gowanus bay for the purpose of being repaired by the Greenpoint Towage & Lighterage Company, on August 24, 1893, parted its moorings in a storm, and was swept adrift into the bay, where it was picked up by libelants' tug, and moored to an adjacent dock. On petition of respondent, the Greenpoint Towage & Lighterage Company was brought in as a party. Thereafter libelants filed a libel in rem against the bath house. By direction of the court, the suits in personam and in rem were tried together.

Goodrich, Deady & Goodrich, for libelants.

William H. Clark, Corp. Counsel, and Dean & Ward, for the mayor and the bath house.

Hyland & Zabriskie, for Greenpoint Towage & Lighterage Co.

BROWN, District Judge. This bath house, unlike the bath houses built for permanent mooring, was built upon several boats as a substructure; the boats were designed to float, to uphold, and to transport the Bath, wherever and whenever desired. The design included both navigation and transportation. The bath house was in effect the permanent cargo of the boats. It was not permanently moored, as in Cope v. Dry-Dock Co., 119 U. S. 625, 7 Sup. Ct. 336; but on the contrary was designed for navigation and transportation; and that is why boats were used as the substructure. It is, therefore, within the jurisdiction of this court. See The Hezekiah Baldwin, 8 Ben. 556, Fed Cas. No. 6,449; The Pioneer, 30 Fed. 206. The grounds of the decisions in those cases are applicable here. Use in trade and commerce is not essential to salvage; if that were material, there could be no salvage allowed upon yachts, or other water craft used for pleasure, which is absurd.

2. The structure was in the possession of the defendant company for repair. It had been made fast under the direction of an expert in the city's employ, in a manner found sufficient to weather the winter storms, which equal, and often exceed, this storm in severity. The company's employes had been warned not to loosen those lines; but they cast them off after the lighter Success came alongside the Bath, and ran lines to spiles from the Success alone, without any side lines from the Bath to prevent her from swaying. The Johannes, 10 Blatchf. 478, Fed. Cas. No. 7,332. In disobeying directions, and in adding more weight and exposure, and in substituting new lines and new ways of fastening, the company took the risk of going adrift. They would, therefore, be bound to indemnify the city for any responsibility for the salvage claim, in rem or in personam.

3. The company, as bailee, if present when the Bath went adrift, would have been bound to request the Tebo, or any other tug at hand, to endeavor to rescue the bath house, for a reasonable compensation, and prevent injury to herself or other vessels. The bath house was a valuable structure. It is a bailee's duty to protect the

property in his charge, and he is answerable to the owner for the performance of that duty. It was, therefore, equally of the high- est interest to the company as bailee, and to the city as owner, to have the Bath rescued and secured as soon as possible. In fact, the watchman on duty for the night had actually gone ashore to seek assistance only shortly before, and after the structure had got adrift. Under such circumstances, where there is no one present to represent the owners, general or special, at the time of need, and the watchman is in quest of aid, and where the right to proceed in rem is doubtful, the "request" provided for by S. Ct. admiralty rule 19 may, I think, be properly implied by law as respects both personal defendants; while the "benefit" both to the company and to the city from the service is manifest. I have much doubt, moreover, whether any part of S. Ct. admiralty rule 19 is applicable to a case in which the res is exempt from arrest, as public property; though I do not undertake to determine this latter question now. The rule ought to be applied consistently as a whole. The first part of the rule authorizes proceedings in rem; and if an exceptional exemption from arrest for a salvage service should be held to exclude the first clause of the rule, it would seem that such a case should be deemed altogether outside of the intent of the rule, so that the whole rule should be deemed inap- plicable. No construction of the rule should be adopted, if it can be avoided, which would leave the salvor remediless; it would be the worst policy possible to discourage any salvage help to city property in time of need, by denying any legal right, or any mode of remedy, to recover salvage compensation.

4. Under all the circumstances, $350 will, I think, be a reasonable compensation for this service, which I think the company is legally bound to pay. For that sum, with costs, a decree may be taken against the company. As against the other defendants, the pro- ceedings are suspended, until a return of execution against the company. The Alert, 44 Fed. 685.