## THE PIRATE SHIP.

District Court, E. D. Louisiana, New Orleans Division. July 13, 1927.

No. 18817.

1. **Maritime liens ⚖3—Vessel capable of being navigated by its own power or towing, and whose use requires it to be navigated from one place to another, is subject to maritime liens.**

If a vessel, though not engaged in navigation or the carriage of passengers or freight, is capable of being navigated, by its own power or by towing, and its business or use requires it to be navigated from one place to another, it is within the admiralty jurisdiction, and is subject to maritime liens.

2. **Maritime liens ⚖3—Wharves ⚖18—Barge used for dancing pavilion held subject to maritime liens for supplies and wharfage.**

A 600-ton barge, from which the motive machinery had been removed, and which was used as a dancing pavilion, but within six months had been moved and moored to three different wharves, held subject to maritime liens for repairs, wages, supplies, and wharfage.

In Admiralty. Suit by John Doussouy and others against the pleasure boat Pirate Ship, or City of Marietta. On exceptions to libel. Overruled.

J. L. Warren Woodville, of New Orleans, La., for libelants.

Eugene S. Hayford, of New Orleans, La., for respondent.

Arthur B. Hammond, of New Orleans, La., for interveners.

BURNS, District Judge. Libelants claim wages of the pleasure boat Pirate Ship, or City of Marietta, which was seized as she lay in the Mississippi river in the port of New Orleans. Libelant John V. Nielsen claims wages as a sailor; libelant W. H. Dyer, as a painter; John Doussouy, as engineer; Jesse Smith, as pipe fitter; Ted Graham and Louis Malhiot, as deck hands; intervener Thomas Moore, as painter, for balance due for painting the vessel; intervener E. R. Chivers, for electric fittings installed on the vessel; interveners Weixel and Jansen, for oils furnished the vessel; and the board of commissioners for the port of New Orleans, an agency of the state of Louisiana, administering the wharves and port facilities, intervenes for wharfage, alleging that the vessel, which is of 600 gross tons, occupied the wharf at the foot of Canal street, in New Orleans, to which she is moored, and for which dockage or wharfage, on a tonnage basis, according to the public tariff authorized by state law, she owes a total of $210, and certain towage amounting up to $80 by a tug owned by the said board, which is itemized as follows:

May, 1927. For services of tug Samson in moving the Marietta, as follows:

| | |
|---|---|
| April 24, 1927, from Canal street to lower end of Julia street wharf............ | $40.00 |
| April 30, 1927, from Julia street to St. Andrew street wharf ............... | 40.00 |

[1] The owner and claimant, Eugene S. Hayford, a lawyer by profession, appearing in his own behalf, filed an exception to the jurisdiction of this court ratione materiæ, on the ground that "the former U. S. steamer Marietta is now, and has for the past six months been, permanently secured to the Canal street docks, as a dancing platform or barge, all machinery intended for use of motor power has long since been removed, and the barge has not been, and is not intended

for use in transportation of freight, passengers, or use of any nature or kind whatsoever in maritime trade or commerce."

In support of this exception, the decision of the Supreme Court in Cope v. Vallette Dry Dock, 119 U. S. 625, 7 S. Ct. 336, 30 L. Ed. 501, The Hendrick Hudson, Fed. Cas. No. 6,355, and Evansville & Bowling Green Packet Co. v. Chero Cola Bottling Co. et al., 271 U. S. 19, 46 S. Ct. 379, 70 L. Ed. 805, are cited. These are to the effect that a fixed structure, such as a dry dock, not used for the purpose of navigation, is not the subject of salvage service, because the mere fact that such a structure floats does not make it a ship, because it is not used in navigation.

The libelants and interveners rely on the City of Pittsburg (D. C.) 45 F. 699; The Floating Elevator Hezekiah Baldwin, 12 Fed. Cas. 93, No. 6,449; Woodruff v. One Covered Scow (D. C.) 30 F. 269; The Public Bath No. 13 (D. C.) 61 F. 692; The Steam Tug M. R. Brazos, 17 Fed. Cas. 951, No. 9,-898; The W. F. Brown (D. C.) 46 F. 290; The Old Natchez (D. C.) 9 F. 476; Braisted v. Denton (D. C.) 115 F. 428; Charles Barnes Co. v. One Dredge Boat et al. (D. C.) 169 F. 895; Winslow v. Floating Steam Pump, 30 Fed. Cas. 308, No. 17,880; The Raithmoor (D. C.) 186 F. 849; Lawrence v. Flatboat (D. C.) 84 F. 200.

An examination of these cases reveals the test applied generally by the admiralty courts, and it is much more broad and liberal than that contended for by exceptor here, who insists that the Pirate Ship, or Marietta, is beyond the reach of admiralty process, because he is not engaged in navigation, carrying freight or passengers. The courts in the cases cited have held variously that flatboats, pile drivers, pumpboats, scows, and other and various kinds of water craft, are vessels within the admiralty jurisdiction, though not engaged in navigation, or as carriers of passengers or freight; the general test being whether the craft was capable of being navigated, by its own power or by towing, and whether its business required it to be navigated from one place to another. If it was capable of being navigated, and its business or use required it, then it was within the admiralty jurisdiction, and subject to process for maritime liens. If not—that is to say, if by its disposition or lodgment or connection with the shore the craft was not capable of navigation, nor required by its use or business to be navigated from one place to another—then it might be held not to be in commerce and navigation in such a sense as to be subject to a libel in rem in admiralty.

[2] Upon the facts of the record here, under the recognized test, the Pirate Ship, or Marietta, is plainly a vessel engaged in commerce and navigation upon navigable waters, and subject to maritime liens for wages, supplies, necessaries, dockage, wharfage, of the kind and character here presented. Moreover, it is distinctly shown by the original libel and the interveners' libels that she was not fastened permanently to the wharf for six months, as recited in the exception of claimant. She was moved and moored to at least two points in the harbor, by the tug Samson, other than that at which the claimant's exception sets forth. She was, in fact, moored at three different wharves within that period, precisely as any other vessel, ship, barge, scow, or other marine craft might be. She is, in fact, a 600-ton ship, even though her motive power or machinery be dismantled and removed. She has no connection whatever with the land, such as would make her a structure upon land.

In my opinion, the salvage cases to which exceptor refers are beside the point. There is no salvage claim presented here. The creditors here are suing upon maritime liens for wages, supplies, and necessaries, for which, if due, they have maritime liens, and the vessel is properly the subject of admiralty process.

Accordingly the exception will be overruled. Respondent will be allowed 10 days in which to answer.