## COLBY et al. v. TODD PACKING CO.

### No. 5885–A.

District Court, Alaska, First Div., Juneau.

June 1, 1948.

---

[1] No opinion for publication.    [2] Case has since been dismissed.

Joseph A. McLean, of Juneau, Alaska, for libellants.

R. E. Robertson, of Robertson & Monagle, all of Juneau, Alaska, for respondents.

FOLTA, District Judge.

Libellants seek to recover salvage for rescuing five fish trap frames found adrift in the navigable channel of Peril Straits, Alaska, on March, 1948, under conditions constituting a marine peril. Respondent has excepted to the libel on the grounds that a fish trap is not a subject of salvage because it is neither vessel nor cargo within the doctrine of Cope v. Vallette Dry-Dock Company, 119 U.S. 625, 7 S.Ct. 336, 30 L.Ed. 501. Libellants reply to this contention is that the scope of that decision is limited to the facts of that case. They rely principally on Maltby v. Steam Derrick Boat, 16 Fed.Cas. page 564, No. 9,000.

The court will take judicial notice of the fact that a floating fish trap frame is constructed of large logs lashed and bolted into an oblong structure that gives both buoyancy and shape to the trap; that it is towed to the fishing site, anchored to the seaward and moored to the shore by a cable, after which it is transformed into a trap by the addition of gear which is suspended from the framework for the requisite depth in the customary manner to intercept and trap salmon. The frame lies flat on the water and is rather inconspicuous, except for the small building which is usually erected upon it to house the watchmen. Afloat, it would, therefore, closely resemble a raft of logs from a distance. Upon the close of the fishing season, the gear is removed, the trap frame is towed to some sheltered bay or cove and moored to the shore above low water. The court will also judicially notice that the date upon which the frames were found adrift antedated the opening of the fishing season by several months.

The structure involved in Cope v. Vallette Dry-Dock Co., supra, was a drydock which had been moored to the shore for twenty years at the time salvage services were rendered to prevent its sinking in consequence of a collision. Concerning it, the court said, 119 U.S. page 627, 7 S.Ct. page 337: "A fixed structure, such as this drydock is, not used for the purpose of navigation, is not a subject of salvage service, any more than is a wharf or a warehouse when projecting into or upon the water. The fact that it floats on the water does not make it a ship or vessel, and no structure that is not a ship or vessel is a subject of salvage."

At the time this decision was rendered, several cases existed in which rafts of logs and lumber had been recognized as proper subjects of salvage. Indeed, the court took note of them, 119 U.S. page 630, 7 S.Ct. page 338, but distinguished them from Cope v. Vallette Dry-Dock Co. on the ground that the drydock was a fixed structure in the sense that it was permanently moored, from which it follows that the scope of that decision must be deemed to have been limited accordingly. Further support for this view may be found in The Robert W. Parsons, 191 U.S. 17, page 34, 24 S.Ct. 8, page 13, 48 L.Ed. 73, in which the court declared, that its decision in Cope v. Vallette Dry-Dock Co. was on the express grounds that a drydock was like a ferry bridge or a sailors' floating meeting home and was no more used for purposes of navigation than a wharf or warehouse projecting into or upon the water; and in The Ark, D.C., 17 F.2d 446, in which it was held that the house boat there involved, although moored to the shore and not capable of being moved except by towing, was, nevertheless, not permanently

moored to the shore so as to bring it within the doctrine of Cope v. Vallette Dry-Dock Co., but more nearly approached the position of a ship temporarily withdrawn from commerce and moored to a dock. Tebo v. Mayor of City of New York, D.C., 61 F. 692, is likewise in harmony with this view as to the scope of the decision under discussion.

While the instant case is, therefore, readily distinguishable from those cases in which the property salved was fixed or permanently attached to the shore, there yet remains the respondent's objection that a fish trap frame is not a subject of salvage because it is neither vessel nor cargo. This argument was adversely disposed of in The Cheeseman v. Two Ferry Boats, 5 Fed. Cas. page 528, No. 2,633, where the property salved consisted of two boats that had never been placed in service. The court pointed out that the restriction of salvage claims to vessels and cargo was due to the limitation which once existed on the jurisdiction of admiralty courts to tide water. Since about the only property found upon the sea consisted of vessels and cargo, it is not surprising that cases were largely, if not wholly, confined to such property. Commenting on this, the court said, 5 Fed. Cas. page 532, No. 2,633: "But since, in this country, this test of admiralty jurisdiction has been repudiated, it would seem necessarily to result that a salvage claim may be enforced in any case where valuable property in peril is saved on a navigable river over which maritime jurisdiction extends."

In Maltby v. Steam Derrick Boat, supra, the claim of salvage was based on raising a derrick boat. The jurisdiction of the court was challenged on the grounds that a derrick boat was not designed for navigation or commerce. In disposing of the objection, the court said, 16 Fed.Cas. page 564, No. 9,000: "This might be a valid objection if the libel were for contract of affreightment, or for tort by collision," etc., "but it is not a valid objection to a libel for salvage. It has long been held that property, whether it has been an actual instrument or subject of commerce or not, may be the subject of salvage."

These decisions are not, as I view them, in conflict with Cope v. Vallette Dry-Dock Co. They are distinguishable on the facts. The rule deducible from them was succinctly stated in the case last cited as follows, 16 Fed.Cas. page 566, No. 9,000: "I think the test as to what is the subject of salvage is no longer whether it is a vessel engaged in commerce or its cargo or furniture, but whether the thing saved is a movable thing, possessing the attributes of property, susceptible of being lost and saved in places within the local jurisdiction of the admiralty."

At any rate, any doubt as to whether a fish trap frame is a subject of salvage vanishes in the face of decisions uniformly holding that salvage is allowable for the rescue of rafts of logs, timber and lumber, which, it may be incidentally noted, are towed but once to market or to a place for processing, instead of recurrently to and from the fishing site, as in the case of a fish trap frame. Fifty Thousand Feet of Timber, 9 Fed.Cas. page 47, No. 4,783; Keteltas v. Raft of Timber, 14 Fed.Cas. page 431, No. 7,741a; Raft of Spars, 20 Fed.Cas. page 173, No. 11,529; Muntz v. A. Raft of Timber, C.C., 15 F. 555; Bywater v. A Raft of Piles, D.C., 42 F. 917; Whitmire v. Cobb, 5 Cir., 88 F. 91. Nor is Tome v. Four Cribs of Lumber, 24 Fed.Cas. page 18, No. 14,083 in conflict with the foregoing case. The decision in that case turned in part on local custom, Cope v. Vallette, Dry-Dock Co., 119 U.S. 625, 630, 7 S.Ct. 336, 30 L.Ed. 501, Bywater v. A. Raft of Piles, D.C., 42 F. 917, 918, and in part on the circumstance that the lumber was made fast to the shore by landlubbers without the use of any maritime equipment. Since a fish trap frame is very similar to a log raft, and moreover, in the course of its normal life is towed to and from the fish site many times, it would seem, at least by way of analogy, that the instant case is controlled by these decisions rather than by Cope v. Vallette Dry-Dock Co. which is limited to fixed structures not intended for use in trade or commerce. Compare Salvor Wrecking Company v. Sectional Dock Company, 21 Fed.Cas. page 281, No. 12,273, The Rialto, D.C., 15 F. 124, Tebo v. Mayor of

City of New York, 61 F. 692, The Pirate Ship, D.C., 21 F.2d 231. Thus construed, apparently conflicting decisions may be harmonized.

It is my opinion, therefore, that the doctrine of Cope v. Vallette is not applicable to the instant case, from which it follows that the exceptions must be overruled.