**George M. BERRY, Plaintiff,**

v.

**BOAT GIANNINA B., INC., Defendant.**

**George M. BERRY, Plaintiff,**

v.

**Roger W. JONES, Defendant.**

**Civ. A. Nos. 76–1241–C, 76–1242–C.**

United States District Court,
D. Massachusetts.

Nov. 14, 1978.

---

William A. Bibbo, Latti & Flannery, Boston, Mass., for Berry.

Richard A. Dempsey, Glynn & Dempsey, Boston, Mass., for defendant, BOAT GIANNINA B., INC.

David Van Oss, Kneeland, Kydd & Handy, Boston, Mass., for defendant, Jones.

## OPINION

CAFFREY, Chief Judge.

These civil damage actions to recover for losses of lobster traps and attendant gear were filed by George Berry, a commercial lobsterman who owns the vessel RONA G. BERRY.

In Civil Action No. 76–1241, plaintiff seeks money damages against GIANNINA B., Inc., the owner of the vessel GIANNINA B. for the alleged conversion of plaintiff's lobster traps by the crew of the vessel GIANNINA B. In Civil Action No. 76–1242, plaintiff seeks money damages from Roger W. Jones, owner of the vessel MISS MAXINE, for conversion of his lobster gear by that vessel. The cases were consolidated for trial. Defendant GIANNINA B. counterclaimed maintaining that it is entitled to a salvage award for lobster gear restored to the plaintiff. This Court has jurisdiction under 28 U.S.C.A. § 1333. After a non-jury trial, I find and rule as follows:

At the beginning of the lobster season in August of 1975 plaintiff set out 107 lobster traps in the ocean waters southeast of Nantucket in the area of the Nantucket lightship. It was his custom to haul back and rebait his traps twice a week. On each trip subsequent to that first trip in August, plaintiff set out an additional 60 or 70 traps. By the end of September he had set out about 350 lobster traps.

During the last week in September, 1975, plaintiff sailed from Nantucket and located his gear by means of loran bearings. He hauled and rebaited the traps and then returned to Nantucket. There was conflicting evidence at the trial as to how and whether plaintiff's lobster gear was marked and as to whether his markings were in conformity with governmental recommendations. Plaintiff testified that when he left his traps during that trip about September 28 they were set out in strings of 15–22 traps per string and that the strings were marked with buoys, flags, high fliers and radar reflectors. I find that, due to a combination of bad weather and a broken oil line aboard the RONA G. BERRY, plaintiff himself was not in the area where his traps were set out at any time between September 28 and October 11.

It is unfortunate for plaintiff that no witness was produced at the trial who could testify as to the condition of plaintiff's gear markings between September 28 and October 6. However, there was evidence at the trial which indicated that during this time period there was extensive steamer traffic and trawler traffic in the same area. A lobsterman who had set out his gear just to the northeast of plaintiff's saw four vessels dragging in the area of plaintiff's fixed gear on September 30. However, that witness did not observe plaintiff's gear during his September 30 trip. In addition both he and plaintiff testified that plaintiff's traps were set out in the westbound lane of the Nantucket to New York steamship channel. There was other evidence at trial, and I find, that on an average 10–12 steamships pass through that lane per day. Furthermore, it was estimated that in a two-week period 30–50 fishing vessels dragged in the general area of the incident. I find that a large volume of shipping activity occurred in the area of plaintiff's fixed gear between September 28 and October 6, 1975. Although plaintiff's testimony as to the manner in which his gear was marked may well have been accurate as of the time he last saw it on September 28, I find that because of heavy ship traffic it was inaccurate as to condition of the markings of his gear in the two-week period immediately after September 28.

Turning now to plaintiff's claim against the GIANNINA B. and having in mind the evidence summarized above, I find that the GIANNINA B. entered the area where plaintiff's traps were located in the nighttime of October 6 and began towing its net along the bottom. Captain Edwards of the GIANNINA B. saw radar reflectors to the west of his vessel but none in the direction in which he intended to tow. As a result of these observations, he proceeded. However, when Captain Edwards hauled back the nets of the GIANNINA B., he found that they had become tangled with lobster traps. Some of the gear which Captain

Edwards and his crew removed from their nets bore the name "BERRY."

In the time period between October 6 and October 10, the GIANNINA B. remained in the same general area and hauled back approximately twenty-one lobster traps belonging to plaintiff. During that trip as a result of this continued interference with its nets the crew lost 12–13 tows by having to spend its time clearing traps from the nets of the vessels. At no time did the GIANNINA B. haul back an entire string of traps but rather hauled back 3 or 4 lobster traps at a time.

I find that Captain Edwards did not intentionally take up plaintiff's traps in his nets. He testified that hauling back traps results in damaged nets and lost time. I find that the traps were unintentionally hauled back and that the GIANNINA B. did not know where the traps were because the traps were not marked when dragged.

■ Conversion is the result of conduct intended to affect chattels, Restatement (Second) of Torts § 224 (1965), W. Prosser, Torts § 15 (4th ed. 1971). Therefore, I rule that there was no conversion of plaintiff's traps when they were hauled back by the GIANNINA B.

■ I further rule that there was no conversion when Captain Edwards decided to keep the traps on the vessel rather than throwing the traps back into the water. If plaintiff's traps had not already been lost to plaintiff immediately before the GIANNINA B. hauled them back, they were certainly in danger of being lost. Their strings were no longer marked and there was evidence that they had been tossed around by other trawlers. If Captain Edwards had decided to throw them overboard, it is more likely that they would be permanently lost to the plaintiff. Storing the traps on deck was, therefore, consistent with plaintiff's ownership rights.

It is true that Captain Edwards' decision was based solely on the best interests of the GIANNINA B. Captain Edwards testified that he did not throw the traps overboard because they might become entangled with his nets again and result in more lost time. Captain Edwards' decision, however, is nonetheless consistent with plaintiff's interest in the traps. In addition, further entanglements would probably result in further damage to the traps as well.

■ I rule, therefore, that the GIANNINA B. did not convert the property of the plaintiff to its own use. Rather I rule that having come into possession of the traps involuntarily and having decided to keep them on board until its return to port for its own protection, the GIANNINA B. became an involuntary bailee of the traps.

On October 7 Captain Edwards told Captain Mayo that he would leave the traps either at the Cape Code Canal or in Fairhaven, whichever was easier. Captain Edwards finally opted to leave the traps at Fairhaven because he felt that they would be reasonably safe there. Upon leaving the traps at Fairhaven, he notified a representative of the State Fisheries as to their location and asked that the owner be ascertained and contacted. A state warden notified plaintiff of the location of his traps, and plaintiff actually recovered 12 of the 21.

I find that the GIANNINA B. returned to port on October 10, and remained there for a general overhaul until November 10. I rule, therefore, that defendant GIANNINA B., Inc., is not liable for any injury to plaintiff on October 22.

■ With regard to plaintiff's claim against the MISS MAXINE, I find that on October 7, 1975 the fishing vessel MISS MAXINE arrived in the area of plaintiff's fixed gear operations. Captain Rose of the MISS MAXINE was familiar with the area, having fished there on previous occasions. He testified that he had never before encountered fixed gear in the area. Before proceeding, he checked his radar screen and found no indication of the presence of fixed gear in the direction in which he was about to drag.

When Captain Rose hauled back his nets at 6:00 A.M., they were full of lobster line.

At some time after daybreak on October 7, Captain Mayo of the PILGRIM MAID arrived in the area to tend his traps. At that time he observed that his gear had been torn and that the MISS MAXINE was dragging for lobster in the area where he had left his gear. When the MISS MAXINE hauled back, Captain Mayo saw some of his traps hanging in its nets. Captain Mayo left the area but as a result of intervention by Coast Guard personnel, he came back to the area later that day and the eleven of his traps which had been hauled back by the MISS MAXINE were returned to him. Captain Mayo saw no additional traps on the MISS MAXINE, and Captain Rose of the MISS MAXINE testified and I find that he returned to Captain Mayo all the traps he had hauled. Captain Rose did testify that two additional traps were hauled back on the following day, but it is not proven that those were the property of plaintiff.

Clearly plaintiff has established no connection between the activities of the MISS MAXINE and his losses. There is no evidence that the MISS MAXINE hauled back any of plaintiff's traps. The only fact clearly established as to the activities of the MISS MAXINE is that it happened to be in the area of plaintiff's traps on October 7, 1975. As to Roger W. Jones, owner of the MISS MAXINE, therefore, I rule that plaintiff has proven no facts which entitle him to relief.

I find that the MISS MAXINE left the area on October 11 or 12, 1975 and returned to its home port in North Carolina, arriving there on October 21 or 22, 1975. I, therefore, find and rule that defendant Jones is not liable to plaintiff for any injury sustained on October 22, 1975.

▮ As regards the GIANNINA B.'s counterclaim, it should be noted that the three elements of a valid salvage claim are: (1) a marine peril; (2) a service voluntarily rendered when not required; and (3) success in whole or in part. The "Sabine," 101 U.S. 384, 25 L.Ed. 982 (1880). Fishing traps are properly the subject of salvage, Colby v. Todd Packing Co., 77 F.Supp. 956 (1948),

thus the GIANNINA B. must prove that all three elements are present herein before it may recover.

▮ I find that the plaintiff's lobster gear was in marine peril when the GIANNINA B. arrived in the area, and that plaintiff did eventually recover some of those traps, but I rule that the GIANNINA B. is not entitled to recover because it did not render its services voluntarily.

I find that the GIANNINA B. hauled back plaintiff's lobster traps unintentionally. Indeed Captain Edwards testified that he would not have dragged in the area if he had known that the traps were there. Therefore, I rule that its recovery of the lobster pots was involuntary.

In so ruling I have in mind that the activities of the GIANNINA B. were not designed to rescue Berry's fixed gear from danger. It was simply dragging for lobster. In so doing it inadvertently became tangled with the lobster line and found itself the unwilling rescuer of plaintiff's lobster gear.

Whether or not the GIANNINA B. would recover a salvage award at no time influenced Captain Edwards' decisions. He made the only reasonable decisions that could be made by a trawler captain under the circumstances. At all times he based his decisions on what was best for his vessel, employer and crew and not the needs of the plaintiff. The benefit to the plaintiff was unintentional and, therefore, a reward for bestowing that benefit was not a motivating factor.

▮ The public policy reason for rewarding salvors is to encourage mariners to aid one another despite the risk to themselves and their vessels. Smith v. Union Oil Company of California, 274 F.Supp. 248 (D.C. Cal.1966); Nicholas E. Vernicos Shipping Company v. United States, 223 F.Supp. 116 (S.D.N.Y.), modified, 349 F.2d 465 (2d Cir. 1963). Such considerations did not come into play here and no public policy would be served by a salvage award on these facts.

I rule, therefore, that defendant GIANNINA B. is not entitled to recover on its counterclaim.

Order accordingly.