Gerald J. PROVOST, d/b/a Vet's Salvage Diving, Plaintiff Appellant,

v.

Paul J. HUBER, Defendant Appellee.

No. 78–1445.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 10, 1979.

Decided March 23, 1979.

Timothy D. Kelly of Stuurmans & Kelly, Minneapolis, Minn., for plaintiff-appellant.

Paul G. Neimann of Wiese & Cox, Minneapolis, Minn., for defendant-appellee.

Before GIBSON, Chief Judge, ROSS, Circuit Judge, and VAN SICKLE, District Judge.[*]

VAN SICKLE, District Judge.

The Appellant Provost brings this timely appeal from an order of the district court[1] which dismissed his complaint and first amended complaint for lack of subject matter jurisdiction. The action was brought under the admiralty or maritime jurisdiction of the federal courts, and sought a salvage award. The district court, in ruling upon Appellee Huber's Rule 12(b)(1) motion, found lacking a nexus with traditional maritime activity and dismissed the action upon that ground.[2]

The basic facts of this novel case are undisputed. From the allegations of the complaints (original and amended) and the affidavits submitted by the parties in connection with the motion to dismiss, it appears that Huber purchased a two-story frame house in Bayfield County, Wisconsin, with the purpose in mind of moving the structure from the mainland to a lot on Madeline Island situated in Lake Superior. Huber hired a housemover to transport the building and contents by truck-trailer over the frozen surface of Lake Superior. The move was attempted in March of 1977 and, at a point approximately three-fourths of the way to the island, the truck, trailer, house and contents broke through the ice.

---

[*] Honorable Bruce M. Van Sickle, United States District Court for the District of North Dakota, sitting by designation.

[1] Honorable Harry H. MacLaughlin, United States District Court, District of Minnesota.

[2] The district court, in considering the Defendant's Rule 12(b)(1) motion to dismiss, reached his decision after ". . . a full review of the record of the case, including the Amended Complaint, the accompanying affidavits, and the memoranda and arguments of counsel, . . . ."

While the house was partially submerged in the waters of Lake Superior, Huber was approached by an individual who represented himself to be an underwater contractor and who suggested that the structure be sunk to the bottom of the lake to preserve and protect it from ice damage until such time that it could be raised when weather permitted. Huber and his insurer agreed to the plan and the house was thereupon lowered to the lake bottom by placing sandbags on the floor.

In May of 1977 the Plaintiff and a second diver (not a party to this litigation) were approached by Mr. Edward Erickson (the underwater contractor who had lowered the structure to the lake bed). After the situation concerning the submerged house was discussed, the Plaintiff and his fellow diver agreed to assist in retrieving the building, although no specific terms of compensation were reached. Plaintiff spent about sixty hours of underwater work removing sandbags from the floor of the house. While Plaintiff was recharging his air tanks and absent from the jobsite, Erickson commenced to raise the structure. That attempt resulted in the house breaking up to the point of total destruction. Erickson retrieved substantially all of the pieces and disposed of them in a landfill at a cost of $500.00 to the Defendant and his insurer.

Prior to the move in March of 1977, the Defendant secured insurance on the structure (but not the contents) in the sum of $20,000.00. It is unclear from the record, but we may safely assume for purposes of this decision, that the insurer paid the full amount of the policy limits.

Some time after the unsuccessful attempt to retrieve the house intact from the bottom of Lake Superior, the Plaintiff billed the Defendant for $500.00 for his services rendered. The bill remains unpaid, and this suit claiming a maritime salvage of $10,000.00 followed.

As stated above, the district court dismissed Plaintiff's action for lack of a nexus with traditional maritime activity. This Court recently, in *Shows v. Harber*, 575 F.2d 1253 (1978) determined the necessity of such nexus in maritime cases. The Supreme Court has established that proposition in tort actions brought under the admiralty jurisdiction, *Executive Jet Aviation, Inc. v. Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), and the same has been fixed for salvage cases, *Cope v. Vallette Dry Dock Co.*, 119 U.S. 625, 7 S.Ct. 336, 30 L.Ed. 501 (1887).

In *Cope* the Supreme Court, at page 627, 7 S.Ct. at page 337, rejected a salvage claim in connection with a floating drydock on the basis that "no structure that is not a ship or vessel is a subject of salvage." "Vessel" is defined at 1 U.S.C., Section 3, as "every description of water craft or other artificial contrivance used, or capable of being used, as a means of transportation on water." The short answer to Appellant's assertion that the tractor-trailer being used to carry the house was a vessel within the meaning of maritime law because it was transporting the structure over water is that such transportation was on ice, not water, and that immediately upon the transporter breaking through the ice, it sank to the bottom of the lake. By no stretch of the imagination can we equate a multi-wheeled device, designed and built for the purpose of transportation over a hard, defined surface—such as roads, highways, and even ice—with a vessel or ship as those terms are used in maritime law.

The Appellant argues that even if the transporter cannot be considered a vessel, the house is still the proper subject of salvage, thereby bringing this action with the admiralty jurisdiction of the federal courts. In support of this assertion the Appellant cites, *inter alia, Broere v. Two Thousand One Hundred Thirty-Three Dollars*, 72 F.Supp. 115 (E.D.N.Y.1947), wherein the court found that money found on a human body floating on navigable waters was a proper subject of salvage. The distinguishing feature found in *Broere*, however, and the determinant for finding admiralty jurisdiction, was the fact that, prior to his death, the individual concerned had embarked upon a maritime adventure. In the instant case we do not and cannot find that,

prior to breaking through the ice and submerging, the house had embarked upon a "maritime" adventure. In other words, circumstances attending the placement of property in or upon navigable waters must be considered and are decisive when dealing with the question of admiralty jurisdiction and salvage. The fact that certain property may be the proper subject of salvage, standing alone, does not confer admiralty jurisdiction upon the federal courts. A nexus with traditional maritime activities must still be shown.

We recognize that cases decided since *Cope*, supra, have broadened the somewhat restrictive view therein enunciated by the Supreme Court as to what may properly be the subject of maritime salvage. For example, the Second Circuit concluded in *Lambros Seaplane Base v. The Batory*, 215 F.2d 228 (1954), that a seaplane down at sea is subject to the maritime law of salvage. *Lambros* is distinguishable on the ground that a seaplane—as opposed to a wheeled land vehicle—is designed and used for taking off of, flying over, and landing upon a water surface. Also, the district court in *Colby v. Todd Packing Co.*, 77 F.Supp. 956, 12 Alaska 1 (D.Alaska, 1948), allowed a salvage claim involving floating fish trap frames found adrift. The distinguishing feature in *Colby* is obvious: Fish trap frames are designed to float upon and be transported across a water surface.

We conclude, upon the facts present in this case, that the district court was correct in dismissing the action for lack of a nexus with traditional maritime activities.

Affirmed.