Wayne P. SULLIVAN, et al., Plaintiffs,

v.

GENERAL HELICOPTERS, INT'L,
et al., Defendants.

Civil No. L–07–2825.

United States District Court,
D. Maryland.

July 10, 2008.

Donald E. Pallett, Parker and Pallett LLC, White Marsh, MD, for Plaintiffs.

Jonathan M. Stern, Schnader Harrison Segal and Lewis LLP, Washington, DC, M. Hamilton Whitman, Jr., Kelly M. Preteroti, Ober Kaler Grimes and Shriver, Baltimore, MD, for Defendants.

## MEMORANDUM

BENSON EVERETT LEGG, Chief Judge.

In November 2005, Plaintiffs Wayne P. Sullivan and Sullivan & Sons, Inc. ("Sullivan's") used a truck-mounted crane to move a disabled helicopter from the ramp of a vessel docked in the Port of Baltimore. Sullivan's has now sued General Helicopters, International ("GHI"); G.A.S. Capital, Inc. ("GAS"); and Ceres Marine Terminal ("Ceres") for a marine salvage award of $250,000. Each of the Defendants has moved to dismiss the complaint.

As explained more fully below, Sullivan's has demonstrated that the Court has juris-

diction over this suit, and it has properly stated a claim against both Ceres and GHI. Insofar as Sullivan's seeks to proceed against GAS and the helicopter, however, its complaint must be dismissed. Accordingly, the Court will, by separate order, GRANT in PART and DENY in PART the Defendants' motions to dismiss.

## I. Background

On November 13, 2005, a group of stevedores working for Ceres attempted to unload a helicopter from the M/V Franconia while the vessel was docked safely in the Port of Baltimore. The stevedores bungled the job, breaking the nose wheel of the helicopter as they hauled it by tractor down the Franconia's loading ramp to the pier. Unable to move the helicopter from the ramp, the stevedores called for assistance.

Help soon arrived in the form of a tow truck from Sullivan's Garage. According to Sullivan's, the helicopter was unsecured on the Franconia's ramp and exposed to "high winds" at the time they arrived on the scene. Docket No. 1, ¶¶ 7, 11. Using a heavy-duty crane mounted on top of their tow truck, Sullivan's lifted the helicopter from the ramp and lowered it safely to the pier. The parties agree that Sullivan's was never paid for its work.

On November 18, 2007, Sullivan's filed this lawsuit against Ceres and GHI, the owner of the disabled helicopter. Sullivan's also sued G.A. S. Capital, Inc., GHI's corporate parent. In its complaint, Sullivan's seeks a marine salvage award of $250,000 for its assistance in moving the helicopter. Alternatively, Sullivan's asks that the helicopter be arrested and sold, and that the proceeds of the sale be applied in satisfaction of its salvage claim. Each of the Defendants has moved to dismiss the complaint.

## II. Discussion

The Defendants' motions to dismiss are based on two different theories. According to GHI and GAS, Sullivan's complaint should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Alternatively, all three Defendants argue that Sullivan's has failed to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). In this procedural posture, the Court must address the jurisdictional question, i.e., the motion to dismiss under Rule 12(b)(1), before passing to the merits of the dispute. *See, e.g., Constantine v. Rectors and Visitors of George Mason University*, 411 F.3d 474, 479–80 (4th Cir. 2005); *citing Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) ("[S]ubject matter jurisdiction is a necessary prerequisite to any merits decision by a federal court.")

### A. *Subject Matter Jurisdiction:*

As the party asserting jurisdiction, Sullivan's bears the burden of demonstrating "that jurisdiction does, in fact, exist." *Lovern v. Edwards*, 190 F.3d 648 (4th Cir.1999). In determining whether Sullivan's has met its burden, the Court may consider evidence outside the pleadings, such as affidavits, without converting the proceedings into a motion for summary judgment. *See Williams v. United States*, 50 F.3d 299, 304 (4th Cir.1995). As the Fourth Circuit has recognized, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.; quoting Richland–Lexington Airport Dist. v. Atlas Properties*, 854 F.Supp. 400, 407 (D.S.C. 1994).

Since the early nineteenth century, it has been widely assumed that claims arising out of salvage operations fall squarely

within the admiralty jurisdiction of the federal courts. *See, e.g., Executive Jet v. City of Cleveland,* 409 U.S. 249, 270, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972); *Treasure Salvors, Inc. v. Unidentified Wrecked & Abandoned Sailing Vessel,* 640 F.2d 560, 566 (5th Cir.1981). Yet though it is true that most salvage claims are so obviously maritime in character as to require no jurisdictional analysis at all, occasionally a putative claim bears a more tenuous relationship to traditional maritime activity. *See, e.g., Provost v. Huber,* 594 F.2d 717 (8th Cir.1979) (Plaintiff sought salvage award for rescuing parts of a house which had fallen through a frozen lake). In these borderline cases, courts have struggled mightily to fashion a coherent standard for determining their authority to hear the dispute. *See id., Historic Aircraft Recovery. v. Wrecked and Aband. F4U–1.,* 294 F.Supp.2d 132 (D.Me.2003). It is to this challenge that we presently turn.

The Defendants submit, and the Court is inclined to agree, that a logical starting point for the jurisdictional analysis is the two-part test for admiralty jurisdiction in tort cases. In *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* the Supreme Court explained that "a party seeking to invoke admiralty jurisdiction over a tort claim must satisfy both conditions of location and of connection with maritime activity." 513 U.S. 527, 534, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995). To satisfy the location prong of the test, the claimant must establish that the tort giving rise to his injury occurred on navigable water, or that an injury suffered on land was caused by a vessel on navigable water. *Id.* The

connection prong of the test raises two questions: first, whether the general features of the incident giving rise to the claimant's injury have a potentially disruptive impact on maritime commerce; and second, whether "the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Id.;* quoting *Sisson v. Ruby,* 497 U.S. 358, 363–65, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990).

■ According to GHI and GAS, the jurisdictional inquiry in this case should be governed by a modified version of the *Grubart* test. Rather than focus on the incident giving rise to the claimant's injury, the Defendants' test would look to the activities of the putative salvor, in this case Sullivan's assistance in moving the disabled helicopter. The Defendants would also reduce the "connection" prong of the test to the single question of whether the salvor's activities bear a substantial relationship to traditional maritime activity. Protesting that they see "no reason to redefine maritime activities," Sullivan's objects to the Defendants' test but offers no competing test of its own.[1]

Although at least one district court has declined to apply the *Grubart* test in determining its jurisdiction over a salvage claim, *see Historic Aircraft Recovery, supra,* the Court believes that the Defendants' approach is practical. Under the circumstances of this case, the activities of the putative salvor are both easy to identify and readily amenable to *Grubart's* two-pronged analysis. Accordingly, the Court will apply the Defendants' test below.

---

**1.** The unspoken implication of Sullivan's position is that the Court should exercise jurisdiction merely because Sullivan's has styled its claim as a salvage action. As the District of Maine has recognized, however, "[s]uch a broad rule would inevitably lead to federal courts invoking their admiralty jurisdiction over a bizarre variety of claims that have little or no connection to traditional maritime activity." *Historic Aircraft Recovery,* 294 F.Supp.2d at 138.

■ We begin with the "locality" prong of the test. At the time Sullivan's arrived at the terminal, the parties agree that the helicopter was sitting, with a broken wheel, on the Franconia's loading ramp. As the courts have consistently recognized, "[f]ederal admiralty jurisdiction extends to the means of ingress and egress ... of a vessel in navigable waters." *White v. United States*, 53 F.3d 43, 47 (4th Cir. 1995); *citing Russell v. City Ice & Fuel Co.*, 539 F.2d 1318, 1320 (4th Cir.1976); *see also The Admiral Peoples*, 295 U.S. 649, 651, 55 S.Ct. 885, 79 L.Ed. 1633 (1935) ("The basic fact in the instant case is that the gangplank was a part of the vessel.") Such "means of egress" clearly include the ramp of a vessel docked at the harbor for unloading. As a result, the Court has no trouble concluding that the helicopter was located "on navigable waters" when Sullivan's moved it to the pier.[2]

Turning to the "connection" prong of the test, the Defendants urge us to apply a multi-factor analysis to determine whether Sullivan's actions bear a substantial relationship to traditional maritime activity. Docket No., at 11; *citing Oman v. Johns–Manville Corp.*, 764 F.2d 224, 230 (4th Cir.1985). In its decision in *Grubart*, however, the Supreme Court rejected such analyses as needlessly complex and "hard to apply." 513 U.S. at 547, 115 S.Ct. 1043. In keeping with the spirit of Grubart, the Court will thus confine its inquiry to the general question of whether Sullivan's activities are essentially maritime in character.

■ According to GHI and GAS, Sullivan's activities may properly be described as "using land-based equipment to lift or move an object from a ramp to [the] ground." Docket No., at 12. At this level of generality, however, the Defendants' description fails to capture the essential nature of Sullivan's task: the unloading of cargo from a vessel. Thus recharacterized, Sullivan's activities fall comfortably within the ambit of traditional maritime activity. As the Supreme Court recognized in *P.C. Pfeiffer Co. v. Ford*, "[p]ersons moving cargo from the ship to land transportation are engaged in maritime employment." 444 U.S. 69, 82, 100 S.Ct. 328, 62 L.Ed.2d 225 (1979). For this reason, Sullivan's has satisfied the "connection" prong of the test.

■ As the foregoing analysis makes clear, Sullivan's has demonstrated that the Court has jurisdiction over its claim. Accordingly, the Court will deny the Defendants' motion to dismiss under Fed. R.Civ.P. 12(b)(1).

**B.** *Sufficiency of the Complaint*

The Defendants next contend that Sullivan's has failed to state a claim under Fed.R.Civ.P.12(b)(6). They advance four arguments in support of this position, two of which apply to all Defendants and two of which are Defendant-specific. For purposes of clarity, the Court will address the two joint arguments first and then consider the individual claims.

**i.** *"Marine Peril"*

According to all three Defendants, Sullivan's has failed to plead facts supporting

---

**2.** In light of this conclusion, the Court may easily dispose of the Defendants' argument that the helicopter fails to qualify as "maritime property." Docket No. 9, at 6. For centuries now, courts have affirmed the principle that cargo over navigable waters is the proper subject of a marine salvage award. *See, e.g.,* *The SABINE*, 101 U.S. 384, 11 Otto 384, 25 L.Ed. 982 (1879) ("Salvage is the compensation allowed to persons by whose voluntary assistance a ship at sea *or her cargo or both* have been saved in whole or in part from impending sea peril[.]") (Emphasis supplied).

an essential element of its claim: namely, that the helicopter was facing a "marine peril" at the time they moved it to the pier. Invoking the Supreme Court's recent decision in *Bell Atlantic Corp. v. Twombly,* —— U.S. ——, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Defendants contend that Sullivan's allegations on this point are unsupported by facts and therefore inadequate to survive a motion to dismiss.

In order to withstand a 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. Accordingly, the complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964–65. Although the plaintiff is not required to "set out in detail the facts upon which he bases his claim," *Conley v. Gibson,*[3] 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), he must provide sufficient factual allegations to "raise his right to relief above the speculative level." *Twombly,* 127 S.Ct. at 1964–65. When ruling on a 12(b)(6) motion to dismiss, the Court must "accept the factual allegations of the complaint as true and must view the complaint in the light most favorable to the plaintiff."

*GE Inv. Private Placement Partners II v. Parker,* 247 F.3d 543, 548 (4th Cir.2001).

 In its complaint, Sullivan's alleges that the helicopter was "unsecured," exposed to "high winds," and "on board the ship Franconia" at the time they arrived at the terminal. Docket No. 1, ¶¶ 7, 11. Taken together, these factual allegations raise a plausible inference that but for Sullivan's assistance, the helicopter might have been swept into the water. Stated another way, Sullivan's has adequately alleged that the helicopter was on navigable waters and facing a reasonable apprehension of peril at the time they moved it to the pier. *Twombly* notwithstanding, these allegations are sufficient to satisfy the federal pleading standard.[4] Accordingly, the Defendants' motions to dismiss on this point are denied.

### ii. *Arrest and Sale of the Helicopter*

 As we have already mentioned, Sullivan's requests that the helicopter be arrested and sold, and that the proceeds of the sale be applied in satisfaction of its salvage claim. The Defendants object, correctly, that Sullivan's may execute against the helicopter only by filing an action *in rem.* See, e.g., *R.M.S. Titanic v. Haver,* 171 F.3d 943, 963 (4th Cir.1999).[5]

**3.** Prior to *Twombly,* lower federal courts hewed closely to *Conley's* statement that "a complaint should not be dismissed for failure to state a claim unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." 355 U.S. at 45–46, 78 S.Ct. 99. In *Twombly,* however, the Supreme Court held that "this famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss upon an accepted pleading standard[.]" 127 S.Ct. at 1969. In spite of this conclusion, the Court made clear that by rejecting a literal reading of *Conley* it was not requiring "heightened fact pleading of specifics"; rather, all that is necessary to survive a motion to dismiss are enough facts to nudge a claim

"across the line from conceivable to plausible." *Id.* at 1974.

**4.** In *Twombly* itself, the Supreme Court acknowledged that "[u]nder the relaxed pleading standards of the federal rules, the idea was not to keep litigants out of court but rather to keep them in." 127 S.Ct. at 1976.

**5.** As the Fourth Circuit noted in *Haver,* "[a]lthough a salvor may enforce its claim for salvage service by filing an *in personam* action against the owner, the salvor may also execute on the lien which attached to the ship and its cargo by filing an *in rem* action. *The lien can be enforced only through the institution of an in rem action.*" *Id.* (Emphasis supplied).

Having elected to proceed solely on an *in personam* basis, Sullivan's is barred from enforcing a lien on the helicopter. Accordingly, the Court will strike Sullivan's request that the helicopter be arrested and sold.

### iii. *Alter Ego Liability (GAS)*

By way of review, Sullivan's argues that GAS is liable for salvage services as the parent company of GHI. In support of this assertion, Sullivan's alleges that GAS "regulates the financial [and] business components, [and also] directs the daily operations of Defendant GHI." Docket No. 1, ¶ 26. Assuming, *arguendo*, that these allegations are true, they do not empower the Court to disregard the corporate form and impose liability on GAS.

▉▉▉▉ When examining questions of corporate identity, a federal court sitting in admiralty applies federal common law. *See, e.g., Ost–West–Handel Bruno Bischoff GmbH v. Project Asia Line, Inc.*, 160 F.3d 170, 174 (4th Cir.1998); *citing Swift & Co. Packers v. Compania Colombiana Del Caribe*, 339 U.S. 684, 689 n. 4, 70 S.Ct. 861, 94 L.Ed. 1206 (1950); *Byrd v. Byrd*, 657 F.2d 615, 617 (4th Cir.1981). In the *Ost–West–Handel* case, the Fourth Circuit explained that the determination of whether one corporate entity is the "alter ego" of another is governed by the factors set forth in *Keffer v. H.K. Porter Co., Inc.*, 872 F.2d 60, 65 (4th Cir.1989), and *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 684–87 (4th Cir. 1976). 160 F.3d at 174. These factors include "gross undercapitalization, insolvency, siphoning of funds, failure to ob-

serve corporate formalities and maintain proper corporate records, non-functioning of officers, control by a dominant stockholder, and injustice or fundamental fairness." In order for a Court to disregard the corporate form, "a number" of these factors, including "an element of injustice or fundamental unfairness," must be present. *DeWitt*, 540 F.2d at 687.[6]

▉▉▉ In this case, it is clear from the face of the complaint that Sullivan's allegations are insufficient to pierce the corporate veil. Viewed in the light most favorable to Sullivan's, the complaint alleges, at best, that GAS exercised a modicum of control over GHI. Putting aside for the moment the absence of facts supporting this allegation, it implicates only one of *DeWitt/Keffer* factors—control—and fails to raise the necessary inference of injustice or fundamental unfairness. For these reasons, the Court concludes that Sullivan's has failed to state a claim against GAS.

### iv. *Pecuniary Interest in the Helicopter (Ceres)*

Ceres contends that it may not be held liable for salvage services because Sullivan's has failed to allege that it had a direct pecuniary interest in the helicopter. This assertion is meritless and must be rejected.

▉▉▉ Sullivan's theory is that Ceres was a bailee of the helicopter, and that as such it had a direct pecuniary interest in ensuring that the helicopter was not lost or damaged. This sort of interest has long been an accepted basis for salvage liability. *See, e.g., San Francisco Bar Pilots v. The*

---

6. As a general matter, the determination of alter ego liability "is a fact-specific inquiry that courts often wait until summary judgment to decide." *In re American Honda Motor Co. Dealerships Litigation*, 941 F.Supp. 528, 551 (D.Md.1996). Cases do arise, how-

ever, in which courts have disposed of the issue in ruling on a motion to dismiss. *Id.; citing Resolution Trust Corp. v. Driscoll*, 985 F.2d 44 (1st Cir.1993); *Haskell v. Time, Inc.*, 857 F.Supp. 1392, 1403 (E.D.Cal.1994).

*Vessel Peacock,* 733 F.2d 680, 682 (9th Cir.1984). ("It is a well-established rule of American salvage law that anyone who may be held liable for the loss of or damage to property is liable for an award for its salvage.") (Internal citations omitted). Accordingly, Sullivan's correctly asserts that "a bailee of property may be held liable for a salvage award." *Id.*

In response to this argument, Ceres objects that Sullivan's has failed to allege the necessary elements of a bailment relationship between Ceres and GHI. In order for a bailment to exist, "there must be an existing subject matter, a contract with reference to it which involves possession of it by the bailee, delivery, actual or constructive, and acceptance, actual or constructive." *See, e.g., Transamerica ICS, Inc. v. Dependable Container & Chassis Service, Inc. of Baltimore,* 622 F.Supp. 1488, 1492 (D.Md.1985) (Internal quotations and citations omitted). Each of these elements is set forth in Sullivan's complaint.

Sullivan's alleges that "on or about November 13, 2005 . . . there was delivered to [Ceres], which agreed, for valuable consideration, to accept [ ] GHI's cargo for bailment[.]" Docket No. 1, ¶ 20. This sentence is not a model of clarity, particularly insofar as it fails to specify (inadvertently, perhaps) precisely *what* was delivered to Ceres. Any resulting confusion, however, is ameliorated by the very next sentence, in which Sullivan's alleges that "on the day in a question, [Ceres] was attempting to unload *the helicopter* from the ship Franconia." *Id.* (Emphasis supplied).

Taken together, these two sentences are easily read to allege that a bailment relationship existed between Ceres and GHI with reference to GHI's helicopter, and that the helicopter was actually delivered to (and accepted by) Ceres on the morning of November 13, 2005.

Assuming, as we must, that these allegations are true, they are plainly sufficient to demonstrate that Ceres was a bailee of the helicopter, and therefore a proper defendant to this lawsuit.

### III. Conclusion

For the foregoing reasons, the Court is persuaded that it has admiralty jurisdiction over Sullivan's claim for salvage services. Similarly, the pleadings establish that Sullivan's has properly alleged a "marine peril," and that Ceres had a direct pecuniary interest in the allegedly salved helicopter. With respect to these issues, the Court will therefore DENY the Defendants' motions to dismiss.

The Defendants correctly assert, however, that Sullivan's is barred from proceeding against the helicopter, and that Sullivan's has failed to state a claim against GAS. Accordingly, the Defendants' motions to dismiss on these points will be GRANTED. A separate order follows.

It is so ORDERED.